We're going to start the day with case 24-2976, Goodwin Boateng v. BMW of North America. I understand our counsel are ready to go. I would just ask as you come to the podium to argue today, just make sure you take a second to adjust the podium higher or lower and tilt the microphone so that we can hear everything you say clearly, keeping in mind that it's not just for our benefit, but for our recording of this streaming that will be posted later on the website, which I'm sure is going to get a lot of hits for all of you. So Mr. Kim, I understand you would like to reserve three minutes for rebuttal. Is that right? Yes, Your Honor. Okay. You may proceed. Good morning, Judge Nardini, Judge Lynch, and Judge Menasche. May it please the Court, my name is Joseph Kim from the firm of Biedermann Honex and Vivo. I represent the defendants' appellants, BMW AG, BMW of North America, and BMW Manufacturing Co. This matter arises out of a July 2016 accident where the plaintiff, Appellee Mr. Boateng, parked his 2013 BMW X5 in a narrow residential street, stepped out of the car, holding the door behind his back with his right thumb on the edge of the door, and then he saw an oncoming truck from his left side, the rear of the car, and so he took a step backwards towards his car and closed the door on his thumb tip, and he lost a piece of the tip of his thumb. Trial was held in the Brooklyn Courthouse of the EDNY in July of 2024, and all claims against BMW were dismissed except for one, which was the New York General Business Law Section 349 Deceptive Business Practices Statute. BMW filed a post-trial motion requesting that the 349 charge be dismissed based on a lack of any evidence to support the claim, alternatively for a new trial on the 349 claim, or remitted her of the $1.9 million award. The district court denied BMW's motion, and the present appeal was filed. The briefing is extensive, but I would like to focus my comments on three reasons that BMW's request for directed verdict should be granted. The first two reasons concern essential elements of the GBL 349 claim. First, there was no deception. Two, there was no causation. And the third reason is an overarching one. We contend that the law would be changed by ruling in favor of the plaintiff aptly under the present circumstances, and turn GBL 349 into an inescapable liability trap for manufacturers. So turning to my first reason, that there was no deception. In the New York Court of Appeals case, Oswego Laborers Local 214 Pension Fund versus Marine was careful to avoid opening the gates to a tidal wave of litigation based around GBL 349. It adopted an objective reasonable consumer standard for determining whether a statement or an omission is materially misleading. And so for a statement or omission or practice to be materially misleading, a reasonable consumer acting reasonably under the circumstances had to be likely to be misled. Well, I'm not sure what the deceptive practice here is supposed to be, and I'm going to be asking Mr. Cohen about that. But this is called a soft close door? Yes, Your Honor. It's not very soft, is it? I mean, the pressure that it uses to close the door is the same pressure, and I think this is agreed, that would be used by someone closing the door manually. Right. Correct, Your Honor. Right? It has to be. I think I took from your brief, anyway, the idea that it has to be, because otherwise it wouldn't engage properly to, I don't want to say lock, but lock not in the key sense, but in the sense of firmly be fixed in the closed position. But it has, it does that with sufficient force to cause the kind of injury that Mr. Boateng suffered, right? Potentially, Your Honor. It depends. Well, first of all, it did it. I didn't think that was going to be controversial, because it did cause that kind of injury. But that is, according to some of the testimony at the trial, the force with which the door closes is more than twice what it would take to actually cause that injury. Is that not correct? It is correct, Your Honor. It is designed to overcome the force of the seals to the door. The seals exist on cars that are not equipped with soft-close as well. Yes. Indeed.  And here, we have a situation where it was not merely the activation of the soft-close, but BMW contended at trial and had biomechanic testimony that it was in conjunction with the back step, the force step.  So that was contested. So maybe you think the jury got it wrong, but there was evidence from the jury that it would automatically engage, right, and could crush his finger, or his thumb. Yes, Your Honor, but... And then, so just in terms of the GBL question, right, so you're talking about, you know, the connection between the deception and a reasonable consumer. Again, wasn't there evidence before the jury that BMW knew that there had been other finger injuries in the door that would lead to fractures and in at least two cases, an actual amputation? And so the way the district court explains the jury's verdict is the jury could have decided that the way BMW was marketing and explaining this feature about it could lead to pinching and you just need to keep your fingers out of the door was misleading because it underplayed the risk of injury. Your Honor, there's several points I need to respond to in that. Within the claims that were known, yes, fractures, but not amputations except for the two, which had clear circumstances. I mean, even fractures, right? So like, so the idea is, well, the manual says keep your finger out of the door because it could lead to pinch, there's a risk of pinching, right? Your Honor, that, it does say that, but that is a statement which Mr. Boateng never saw. Well, of course, and that's why there isn't liability on the failure to warn claim, right? So the idea is, well, if there were additional warnings, it wouldn't have affected the injury on that day, right? But the GBL does not require a proximate cause or sort of direct reliance on the warning, right? So the way the district court explains it, and this seems consistent with the New York State case law, is if they had marketed this feature in a non-misleading way, he wouldn't have gotten the soft closed door, or at least he would have been more careful with it. Your Honor, the New York Court of Appeals does require for the GBL 349 standard to have actual causation. There is... Right, it has to be caused as a result of, right? So it's not simply but for causation, but it's something less than proximate causation. Does that seem accurate? I would contend, Your Honor, that it is proximate causation that is required, and here, if I may apply the standard for the reasonable consumer test here, there is no reasonable consumer acting reasonably under the circumstances who would try to close a car door on their fingertip. No, of course not, but that's not what we're talking about here. I know some reasonable consumers who have closed car doors on their fingers, they didn't intend to. I can testify firsthand that they didn't intend to. That kind of thing happens, but the difference here is that he is not intending to close the door, the door closes itself. It's the case, is it not, that the car is also equipped with, under certain circumstances, sort of automatic windows, right, that you have to push a button to get it started, but they will then go up and close altogether, and those, if you did put your hand there, it would stop it. Right? Yes, Your Honor. And so why wouldn't a reasonable consumer advise, as Mr. Boateng was eventually advised when he discovered that the car had something like this, advise that there is this soft close feature without being told, you know, but it ain't so closed, might think that the door is not going to close itself on his finger or will stop if his hand is in the way the same way the windows do. Okay, Your Honor. The difference between windows and doors was covered extensively at trial, but in a nutshell Well, that's right. It was covered extensively at trial, and then the jury returned this verdict. So tell us why there was no evidence that would support the kind of theory that I'm  Well, the reason, Your Honor, is something that you said at the very beginning of your remark, which is that Mr. Boateng was not intending to close the door at all. He was not acting in the belief that it was safe to close the door on his thumb. No, of course not. He wasn't thinking it was closed. Now, again, you said, and I sort of in reading all the briefing thought, well, that's a reasonable theory that what he did was he bumped into it, but he specifically testified that he did not bump into it. The door was not closed by his rear end contacting the door. The door, however, was engaged. He was not intending to close it. He did not try to close it so that he's not trying to close the door on or not on his finger. It is, you know, if I had, I have actually own a BMW, it doesn't have this feature. When I close the door, I have to close it, right? And of course I would not put my finger there, but I would feel pretty comfortable holding the door with my hand because I know it's not going to close itself. Now, if one thought from the idea of a soft close that it's not going to close, if it takes the hand, it's going to back off. It's closing softly. Why couldn't a reasonable consumer think that? In other words, that it's not, you know, just as I don't think it's negligent for me to hold the door of a non-self-closing car because I know that it's not moving in that direction. I'm keeping it open with my hand. Why would it be, not be possible for a reasonable consumer to think that he could do the same thing with the soft closing door, except that it turns out that when the door gets close, it will then crush the hand. Because Your Honor, again, specific to the circumstances of this accident, Mr. Boateng wasn't thinking that. He wasn't thinking that he could bring it. Well, how do you know what he was thinking? He testified to what was going on. He had gave his account of this, and we have to assume the jury believed his account. We understand Mr. Boateng's testimony to be that he knew since childhood not to close any door on his car. Yes, I understand. Like, I mean, you're, you know, you make this case and it seems plausible that maybe he's just being negligent by putting his finger in the way of the door, but the jury's entitled to credit the testimony in which he says, I was not closing it all the way, and I wasn't aware that it could automatically engage and crush my finger, right? Like, that is a version of events in which there was supporting evidence, right? Your Honor, he certainly was aware that it could close the door automatically from a particular distance. It has to be close enough to actually be contacting the secondary latch, which results in a gap of approximately... But I thought the second half of Judge Menachie's question said, and crush his finger. The finger would already have to be compressed, Your Honor, before... I mean, I get your argument that this is kind of a pretty idiosyncratic circumstances. Like, he has to be holding the door such that his finger is kind of looped around the edge and it's squeezed a bit so it fits in the space and so on. But that's what happened, right? And he does testify that he wasn't aware that it would automatically engage on his finger and amputate it. Again, we're not disputing that his finger was caught in the door, that the mechanism activated, and that he did lose the tip of his, you know, a piece of the tip of his thumb. But you're saying that there's no evidence on which a jury could conclude that there was misleading marketing from BMW, or there was a material omission, right? Because the jury would be compelled to conclude that everybody knows not to put their finger in the door, and if you just followed that commonsensical advice, you would have avoided the injury here, right? Well, so I think we have to look at the theory of causation advanced by the district court. And the only way that the court found there to be a causal link between the omission of something BMW could have said and the occurrence of the accident was that Mr. Boateng could have chosen not to purchase the vehicle. But there was no such testimony. And furthermore, focusing on conduct at the time of purchase so remote in time from the occurrence of the accident. Yeah, but I think what we have to think about here is what could the jury have found? The district court had one theory of that. There might be other theories of that. So I think the questions that you're being asked, as Judge Menasche formulated it earlier, was maybe he wouldn't have bought the car, or maybe he wouldn't have bought the car with that package of equipment, or maybe just he would have then known to be more careful with that door, the way he would be careful when he was slamming the door himself. Well, Your Honor, if we really talk about what the jury thought. No, I'm not talking about what the jury thought. I don't know what the jury thought. The question is, what could the jury have thought that would justify this verdict? And we're giving credit to every inference that a reasonable jury could have drawn from the evidence in the record. That's how, that's our standard of review here. Well, we know, Your Honor, that the jury thought that the failure to warn was not a cause in  Yes, but the failure to warn at trial was focused very much on what was in the manual. And as you just said, he never read the manual. So it's a little difficult to say, if you thought that the German manual really did warn you that this was dangerous, while the English translation used a word that is more commonly associated with baby's cheeks than with two pieces of metal slamming together, you might think that, as the jury did think that, because they specifically said there was an inadequate warning. But that warning can't have been the cause, or that inadequate warning in the manual could not have been the cause, because he didn't read it. That's different than what we've been talking about, which is, the whole idea here is we've got this swell thing that closes the door softly. Your Honor, I don't see anything doctrinally or factually that would limit the failure to warn claim to only the printed materials of the manual. No, no, no, no, no, no. The question is, what might the jury have concluded? We have a jury that, after a trial, that focused pretty heavily on what was in the manual and the translation of what was in the manual. And they found that warning was insufficient. But then they found that that didn't have causation. Then with respect to the GBL claim, they found both a deceptive practice and causation. So I suppose juries can be inconsistent, and we don't reverse verdicts on that account. But if we're trying to account for what could they have been thinking, it seems they drew a distinction between the GBL deception and the failure to warn claim. Yes, and Your Honor, that distinction, there is one other possibility that the jury could have credited by process of elimination. And that was this purported discrepancy in the claims numbers as between what was reported to the KBA versus what the KBA did. Yes, Your Honor, you have this argument that the only possible deception would be what happened in discovery. But that's not right. I mean, the jury thinks that there's inadequate warnings, and then the jury also thinks on the GBL claim that BMW engaged in consumer-oriented conduct when it issued information regarding the safety and risks of the soft-close equipped door. And you know, the jury does decide that additional specific warnings in the manual would not have avoided the injury here. But maybe, but if BMW had not been, had been more transparent about the risks of the SCAD feature in general, it would have affected, you know, whether Boateng had that feature and how he interacted with it, right? And that's what the GBL claim, that's what the, that's why GBL claims are different from failure to warn, because it's not about the specific warning, it's about the way products are marketed to consumers, right? Well, as the name of the statute indicates, GBL 349 concerns deception of consumers. This is more aggravated, I would contend, than a mere failure to warn, because of the intent to protect consumers, and accordingly, plaintiffs should have to meet a higher burden to meet such a claim. It's more specific. I don't understand that. It's not a higher burden. It's a different burden. There are slightly different elements to it. It's not like if you lose your failure to warn claim, a fortiori, you have to lose the other claim. That's not true. There are different elements, different approaches, different ideas, different concepts, and different, perhaps, theories on which the plaintiff argues or that the jury could come up with based on the evidence that was presented at trial. I agree with Your Honor that they can be conceptually distinct. However, here we have a situation where the GBL 349 claim is just sort of buttressing or second layering on the failure to warn claim, but GBL 349 should not be construed as a wider claim than the strict products liability failure to warn claim. That would transform GBL 349 into something that's even a stricter form of liability. No, it's not a stricter form of liability. It's just a question of what kinds of deception are involved. The failure to warn has to do with the very specific issue of specific kinds of warnings and whether they were adequate or not. This focuses more on the, I think I used the word broader, but it's just a question of what the marketing was, which could be a completely different thing than what's in the manual. And evidently, the jury thought it was because they reached a different conclusion on causation. I guess your position would be the GBL claim would have to be based on the lack of warnings and it doesn't make sense to say that there's no failure to warn claim, but there is a GBL claim because there wasn't any other kind of omission, right? That's certainly half of the argument, Your Honor. But, you know, it is right what the district court said, which is the GBL claim doesn't require reliance on specific warnings, right? That's what the newer courts have said. And yes, that's a very... Because it is directed toward consumer-oriented information. So just as a kind of hypothetical, the information that BMW is communicating to the marketplace about the safety risks of this door are the warnings in the manual that talk about a risk of pinching, right? I'm sorry, could you repeat that? The information that BMW is communicating to the dealerships and to consumers and everybody is the risk of pinching, right? That there is a pinching mechanism that is warned. Right, so let's say actually the warning was more robust, that the manual said there is a risk of not only pinching, but a fracture and in some cases there have been amputations of appendages because of this feature. It's true that Boateng probably would not have read that on the day of the accident, but is it at least plausible that that information would have led to a different message being communicated to consumers when they're deciding whether to get the SCAD feature and how to interact with it? But Your Honor, the question is, how would it have modified Mr. Boateng's behavior when what his behavior was dictated by was avoiding an oncoming truck? It wouldn't have changed the causal analysis. Well, certainly if like at the time that he's avoiding the oncoming truck, if somebody had whispered in his ear, your figure is about to be amputated, he probably would have changed his behavior, right? But that's speculation. Really? He would have said, no, I just really care the most about the truck and I'm going to sacrifice my finger for that purpose, even if it's just as simple as moving my thumb out of the way? You think it's implausible that he would have done that and somebody specifically told him that? If I'm understanding, Your Honor, you're suggesting that if somebody was standing next to Mr. Boateng... Yeah, and specifically appraised him of the risk of what was about to happen. You don't think he would have taken his finger out of the way? There's also a chance he might not, Your Honor. I mean, he's trying to avoid a truck. What's worse? I mean, I kind of thought that was an easy question. I mean, I understand you could resist whether if they had said something more robust in the manual or in the marketing materials, it would have made a difference. But it's very weird to say that if somebody at the very moment when his finger was about to be cut off, they said, your finger's about to be cut off and he would have said, I don't care. I mean, a jury could at least conclude that he would have cared about it, right? Why don't we do this? Why don't you answer Judge Menache's question? We've kept you up a long time. Answer that question and then we'll hear from your opposing counsel. If somebody had actually said that into his ear at the moment, then yes, I would hope that Mr. Boateng would heed that. So if that's true, then if in fact the message that's being communicated to consumers by which this product is being sold to consumers says, you just need to be cautious because there's a risk of pinching of a finger. Could a jury not conclude that if it was a more robust warning that talked about amputation, that it would affect consumer behavior both in whether they purchase the feature and how they interact with it? Yes, Your Honor, but I don't know why we would revive the failure to warn claim, which was dismissed. The jury found that there was no causation. Because it might not be specific reliance on the specific warning. It might be the way consumers behave in response, right? That's the difference, right? There's no reliance requirement for the GBO claim. So the difference between reliance, causation and reliance as illustrated by the Stuttman case, which says that, and actually I think the district court discussed that on Special Appendix 85. Causation is when you're led to believe something. But reliance is going the additional step of alleging that, you know, I would not have otherwise entered into that transaction or purchased that vehicle. That's what the case law is calling reliance. But causation is still a requirement, and I believe it is proximate causation that's required. Okay. All right. I think we've, again, kept you up long enough. You've got three more minutes. Why don't we hear from Attorney Cohen? Thank you. Thank you, Your Honor. Good morning, esteemed justices. Thank you for having me. My name is Avi Cohen, and I was the trial counsel for Mr. Boateng. In listening to Mr. Kim explain why the Rule 50A motion should have been granted by Judge Matsumoto, I still am not hearing him identify any particular error that the court committed. Now, the trial court, this was a two-week trial, and after the verdict, Judge Matsumoto issued a 102-page written decision as to why there was sufficient evidence to overcome the GVL 349 claim. Now, as this court is very much aware, a Rule 50 motion was only going to be granted if there's a complete absence of evidence supporting the verdict or overwhelming evidence in favor of the moving party. I mean, if we thought that actually saying there's no liability on the failure to warn claim but there is liability on the GVL claim is just a contradiction that no rational jury could arrive at, would that be a basis for vacating the jury's conclusion? No, Your Honor. Even if it's irreconcilably, irrationally contradictory? No, Your Honor. Actually, Judge Matsumoto in her decision paralleled the commonality between the failure to warn claim and the GVL 349 claim, and oftentimes in these types of cases, the two are argued simultaneously, but there is specific nuance and differences between the two. So no, I get it. I get if it's rational and we can reconcile them, it would not be a basis. But if it really were a contradiction, would that be a basis for saying like no rational jury could return this result? No, I wouldn't say that, Your Honor. Your Honor, also because of the fact that on the failure to warn claim in the jury verdict sheet, the jurors actually had checked off yes on whether or not BMW failed to warn. It was just the last. Right. So BMW failed to warn, but that wasn't the cause of the injury. Correct. It was going to happen regardless of the warnings. Correct. And then on the GVL claim, they say they engaged in when they issued information regarding the safety and risks of the SCAD, the information was likely to mislead a reasonable consumer. Right. And that was the cause of the injury. So how do you reconcile those two things? Doesn't it seem like that is a contradiction? Like BMW didn't provide an adequate warning, but that didn't cause an injury. BMW didn't provide an adequate warning for purposes of GVL, and it did cause the injury. Okay. So with respect to the action to the failure to warn, there was language in there, as Your Honor had referenced. It was danger of pinching. That's the specific language that BMW had used throughout the case and in their manuals. BMW's corporate representative, Klaus Bruckelmeier, was on the stand, and when he was asked specific questions about that language, he was asked, what exactly is pinching? And he made gestures that seemed to show that it was actually a crush. And Judge Matsumoto actually asked him, doesn't that seem to indicate that it doesn't jive well with the English language? Are you using that based on theory? So I get that, right? And there's no question that the jury thought that the warnings were inadequate, but if it enters a specific finding that the adequate warnings was not cause of the injury, then how can the inadequate warning simultaneously be the cause of the injury for the purposes of another claim? Well, I'm just trying to understand how a rational jury could return this verdict. Sure, because BMW had evidence of at least 44 worldwide injuries. They were privy to that information themselves. They were investigated by the KBA prior to Mr. Bruckelmeier. Yeah, but again, you're talking about why they could have given a better warning because they had knowledge about the risks. I'm saying there's no question because we have a special verdict for them. The jury thought the warnings were inadequate. So the difference between the two counts is the causation. So why can a jury rationally conclude that for the purposes of a failure to warrant claim, the adequate warnings did not cause the injury, but for the purpose of the GBL claim, the adequate warnings did cause the injury? How do you reconcile those two conclusions? One of the things that Judge Matsumoto actually issued in her decision was that BMW's witnesses acknowledged that the force of— and, Your Honor, this is what you were referencing before— the force of the soft-close automatic door is more than double that of a regular door. Right, but I'm still not hearing an answer to Judge Matsumoto's question. I'm a little surprised that I'm not because—do you need to reconcile those? In other words, I read the appellant's brief. It did not make an argument that the verdict needs to be reversed because the jury's verdicts are irreconcilable on the different claims. That's not what they're arguing. Is that right? Correct. And isn't that because there's—verdicts are not reversible on that grounds? Verdicts are not reversible on the grounds that there are two irreconcilable differences on different claims or different counts? That's correct. And that's because the question is whether there was sufficient evidence to support the verdict that they rendered that is being appealed. If they are irreconcilable, maybe they made the wrong call on the failure to warn claim. We're not reviewing that. They've made their decision. It is what it is. That claim was rejected. So that's not being challenged. What's being challenged is the verdict on this claim, and the issue is whether there is evidence that supports this conclusion that the jury reached. Is that not right? No, that is correct, and I agree with Your Honor. And I would, again, emphasize that there is an interrelation between the GBL 349 claim and the failure to warn claim. Sure, they're similar in that some aspects of what information they communicated and, therefore, what information they did not communicate is the way in which those two claims would be evaluated. It doesn't mean they couldn't be argued differently. I mean I think we had some discussion about ways of reconciling them, but the irreconcilability is not an independent basis for reversing the jury's judgment. Is that not your argument? Yeah, it is, Your Honor. Okay. Let me ask one other thing, though, because I'm still puzzled. Could you just articulate for me in a couple of sentences what is the plaintiff's theory? What do you contend was the deceptive practice in which the defendant engaged? And then the follow-up question will be what do you think they could or should have done to avoid misleading consumers? Sure. So BMW had information which only it was aware of, and this court previously, I believe it was the McNaughton case, which I cited in my papers, said that corporations have obviously more knowledge and more information as to the dangers of certain products, and they have an obligation to disclose that if it's something that would endanger a specific consumer. In this case, BMW was aware as early as 2001 that people were being injured as a result of the soft-close automatic door. They did nothing to rectify that. In fact, the evidence shows that all the German documents which were introduced into evidence based on their consent into evidence all demonstrated that BMW was aware of it, did nothing to do it, did nothing to remove it. It was the omission. It was the omission of what you claim is the information that was exclusively in the hands of the defendant, right? That and also coupled with the KBA's recommendations to BMW to make certain changes to their product, and they still didn't do so. They doubled down on it and made it even more dangerous. They actually minimized the gap even to make it even so that somebody like Mr. Boateng would be injured. One of the things that I just wanted to reference was what Mr. Kim had said. He repeatedly referred to it as a piece of the tip of his thumb. It wasn't. We had showed the jury the gruesome photos of Mr. Boateng's thumb. Mr. Boateng then, on Mr. Kim's request, published his finger to the jury to show his permanent disfigurement eight years after the injury itself. So I just wanted to clarify that. Can I just go back to that? So whether the BMW makes this argument or not is one thing. My reading of our case law is that there are circumstances in which we conclude that a jury verdict is ineluctably inconsistent, might be a basis for vacating it. But we make every attempt to reconcile them. The district court certainly did try to explain why it wasn't inconsistent. But is your position that it isn't consistent and that it doesn't matter, or do you think it's consistent? That what? I'm sorry. Actually, the GBL claim is premised on basically a failure to warn. And so they saw the same facts two different ways for the purposes of the two claims, and that's fine? Or do you think that when the jury says the warning is the cause of the injury under one count and not under another count, that that is consistent because the different claims are asking different questions? So my response to that, Your Honor, would be it's sort of a hybrid. I think that obviously they're independent causes of action, but they tend to be lumped together. And oftentimes they're argued in the same case, and maybe there is a verdict that would be consistent where it's for the failure to warn and the GBL 349. In this case, there was sufficient evidence, and BMW has not shown that there was an absence of evidence as to how the jury could have effectively concluded that there was deception. It was materially misleading. The jury was actually also shown what was Trial Exhibit 126. It was a video demonstration of Mr. Boateng coming out of his vehicle in exactly the same way as the date when his thumb was amputated. And BMW's own witnesses confirmed, because they were shown this dozens of times, and BMW's own witnesses confirmed that Mr. Boateng did not touch the vehicle, did not touch the door. It must have been through gravity on its own that the door shut on him. And that was the basis of perhaps the materially misleading.  I think why don't we hear from Mr. Kim. You've reserved three minutes for rebuttal, and we're going to keep it to three minutes, okay? Thank you. Thank you. Keep it tight. Thank you for the rebuttal time. I did not hear anything by Mr. Cohen in response to the question of what was the causation that plaintiff is proffering. I did not hear any response from Mr. Cohen to the question what could BMW have done to actually change the situation. I did hear a response to what was the deceptive practice, and there was a lot of rechurning of the idea that there was something contained in the KBA documents. But BMW embraces the KBA documents because they show not an increased susceptibility to amputations. Yes, it could be caught and there could be a fracture, but we're talking here about an amputation. Does the door, to use counsel's metaphor, act like a gate? Can I ask you this question? If the jury had actually found liability for failure to warn as well as the GBL claim, would you say that there was sufficient evidence to reach that conclusion? No, Your Honor. Really? So even if BMW put like a sticker on the window that says, do not under any circumstances stick your thumb into the door because it could get cut off, that could not plausibly have affected the result that happened here? If those were the facts, Your Honor, I still think there is a strong defense position there because he had his back to the door, and he was acting out of a sense of emergency and not because he was trying to close the door safely on his thumb. Okay. So then is Judge Lynch right about the nature of your argument? Like you don't think it matters that the failure to warn verdict and the GBL verdict seem to be inconsistent, or do you think it matters? I think it has some weight, Your Honor, that they did not find causation in the one. I think it implies clearly that they were crediting something else. Did you argue this? Yes. I mean, we're going on, but did you argue that the GBL claim should be vacated based on inconsistent verdicts? We did. That's my specific question. Did you argue that the GBL verdict should be vacated because it's inconsistent with the other verdicts? That's just a yes or no question. Yes, to the district court, we did, Your Honor. Did you argue it to us as a basis for reversing? Give me a page of the blue brief. No, we are not. You did not. That's the only question I had. No, Your Honor. I need to correct a representation that my brother counsel made about the KBA's supposed recommendations. There was no recommendation to BMW to change something about its setup. To the contrary, they examined the feature, they measured it, and they found it to be adequately safe, and BMW proceeded to market on that understanding. And if the operating gap was reduced in size, that would only make it safer, not less safe, because that means something would be—it would be more difficult to get caught in that operating gap. Your Honor, we'll otherwise rest on our papers. Great. Thank you very much to both counsel. We will take the case under advisement. We thank both of you for coming in today. Very helpful oral arguments.